# UNITED STATES DISTRICT COURT
## for the
### Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

CERTAIN INFORMATION IN THE POSSESSION OF AT&T CONCERNING ▮▮▮▮▮▮▮▮

) ) ) ) ) )

Case No. 3:24-mj-199

FILED
RICHARD W. NAGEL
CLERK OF COURT
4/10/24
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Southern____ District of ____Ohio____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☐ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1)/924(a)(2) | felon in possession of ammunition |

The application is based on these facts:
See Attached Affidavit of Fred Zollers

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I, Brent Tabacchi, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the DEA. See 18 U.S.C. §§ 3122(b), 3123(b).

*Fred Zollers*
Applicant's signature

Fred Zollers, TFO of the FBI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by reliable electronic means __namely, telephone__

Date: __April 10, 2024__

City and state: __Dayton, Ohio__

Caroline H. Gentry
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER ▮▮▮▮ AND INFORMATION ASSOCIATED WITH THAT NUMBER THAT IS IN THE CUSTODY OR CONTROL OF AT&T | Case No. 3:24-mj-199 _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Frederick Zollers, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number ▮▮▮▮ (the "**Target Cellular Device**"), whose service provider is **AT&T**, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408. The **Target Cellular Device** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because, in addition to historical location information, this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.      I am a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI"), assigned to the Cincinnati Division, Dayton, Ohio Resident Agency. I am therefore an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 21 U.S.C. § 878. Moreover, I am an "investigative law enforcement officer" within the meaning of 18 U.S.C. § 2510. I've been a sworn law enforcement officer in the State of Ohio for seventeen years. I am presently a sworn member of the Montgomery County Sheriff's Office ("MCSO"). I am currently assigned to the FBI Southern Ohio Safe Streets Task Force ("SOSSTF") as a TFO.

4.      Through my various positions, I have received training in drug trafficking investigations and have participated in numerous narcotics-related investigations (ultimately leading to successful prosecution) that involved surveillance, gathering evidence of money laundering, interviewing suspected drug traffickers, and supervising the activities of informants who provided information and assistance which resulted in the seizure of narcotics, firearms, and U.S. currency. I have conducted numerous investigations into the unlawful distribution and possession of controlled substance as well as the illegal use and possession of firearms. Based on my training and experience, I am familiar with federal drug laws, and am aware that it is a violation of Title 21, United States Code, Sections 841(a)(1) and 846 to knowingly and intentionally distribute and possess with intent to distribute controlled substances (including heroin and cocaine), as well as to conspire to do the same. Further, I am aware of federal firearm laws and know that possessing firearms in furtherance of a drug trafficking crime is a violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2. In addition, I am aware the possession of a firearm or ammunition by a convicted felon is a violation of Title 18, United States Code, Section 922(g)(1). Through my experience as a law enforcement officer, I also have tracked and

apprehended fugitives from justice. I am familiar with the manner in which fugitives attempt to conceal their whereabouts in an effort to avoid arrest on a pending arrest warrant.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that **DAMITRES A. WARD** has an active federal arrest warrant in Case Number 3:24CR33WHR for being a felon in possession of a firearm in violation of Title 18, U.S.C. §§ 922(g)(1) and 924(a)(8). There is also probable cause to believe that the historical and prospective location information described in Attachment B will assist law enforcement apprehend **WARD** on this pending arrest warrant.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. On March 14, 2024, I investigated an incident in the Dayton, Ohio, area involving **WARD**. Specifically, while fleeing a traffic stop in Montgomery County, Ohio, **WARD** tossed a loaded Ruger model P95 semi-automatic handgun from his vehicle. At the time of the incident, **WARD** had sustained at least two prior felony convictions in federal court for being a felon in possession of a firearm. **WARD**, in fact, currently was on bond pending service of a 40-month term of imprisonment in Case No. 3:21CR90. He also was on supervised release to this Court in

Case No. 3:16CR157. On March 14, 2024, **WARD** was detained temporarily by state authorities but released pending presentation of this incident to federal investigators.

9. On or about March 19, 2024, I obtained a federal criminal complaint and arrest warrant for **WARD** under Case No. 3:24MJ159PBS for being a felon in possession of a firearm. The charges in the complaint arose from the March 14, 2024, incident in Montgomery County, Ohio.

10. This Court scheduled a supervised release revocation hearing concerning **WARD** for March 20, 2024, before the Honorable Walter H. Rice. **WARD**, who was free on his own recognizance, failed to report to the hearing even though his probation officer had advised him of it. **WARD** has not been in contact with federal authorities since that date.

11. On or about March 26, 2024, a federal grand jury returned an indictment against **WARD** arising from the March 14, 2024, Montgomery County, Ohio, incident and charged him with being a felon in possession of a firearm. This Court issued a warrant for **WARD**'s arrest under this indictment – namely, Case No. 3:24CR33WHR.

12. Given **WARD's** failure to appear at the supervised release hearing and the outstanding arrest warrant, I began to search for him.

    a. Law enforcement discovered a social media account belonging to **WARD** listed under the name "Meechie Ward." Based on my training, experience, and time in Dayton, I know that "Meechie" is a common nickname for "Damitres". The account profile for "Meechie Ward" contained a picture of **WARD** and stated: "Meechies [sic] n and out kennels training I specialize in correcting the incorrect." Through my interactions with **WARD**, I know that he purports to train and breed dogs. Given the association of his picture and nickname with the

account and its reference to his purported occupation, I conclude that the "Meechie Ward" account belongs to **WARD.**

        b.      On or about March 17, 2024, **WARD** made the following post to the "Meechie Ward" account: "Last 2 puppies available already partly training house broken sit and stay and go to their designated areas Meechies N and out kennels 937)856-6901." Through this post, **WARD** was directing potential customers to contact him at the **Target Cellular Device** to arrange the purchase of his remaining puppies. I know from a review of jails calls **WARD** made following his arrest on March 14, 2024, that, in anticipation of new federal charges, he planned to sell the remaining dogs from his breeding operation. **WARD's** social media post appears consistent with those jail calls and reveals that he continues to use the **Target Cellular Device**.

    13.    Following the return of the criminal complaint and subsequent indictment against **WARD**, I began to conduct physical surveillance at locations associated with him – including his residence on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. I was unable to locate **WARD** further confirming that he was attempting to avoid apprehension on his pending federal case.

    14.    During the week of March 25, 2024, I spoke with a reliable and credible confidential informant (CI). Law enforcement has received information from this CI in the past, and agents have been able to corroborate the CI's statements. Given the CI's track record of providing credible information, law enforcement considers the CI to be reliable and truthful. During my conversation with the CI, the CI revealed that **WARD** had fled from Dayton to the Cincinnati, Ohio area. The CI also advised that, during the past month, the CI has spoken with **WARD** on the telephone and that **WARD** actively was using the **Target Cellular Device.**

    15.    During late March 2024, I searched law enforcement databases concerning **WARD**. Information from those databases associated the **Target Cellular Device** with **WARD**. For

instance, during contact with law enforcement during October 2022, **WARD** provided the **Target Cellular Device** as his telephone number.

16. On or about April 8, 2024, I once again reviewed the "Meechie Ward" social media account and found that **WARD** had posted on it within the last five to seven days.

    a. In one of the posts, **WARD** displayed the video of a dog and wrote: "Only been with me 7 days 7 days to go Meechies N and out kennels training took my show on the road Dayton too small I will pull up any state or town and show you how Meechies N and out kennels get down she's from Cleveland by the way." Based on my training, experience, and familiarity with **WARD**, I believe that, through this post, he confirmed that he was still operating his dog training service but had relocated from Dayton. **WARD** further indicated that the dog depicted in the video was from Cleveland, suggesting that he may have fled to that area.

    b. In follow up post, **WARD** responded to the comments of another poster, stating: "Y'all pissing me off with these fake ass pics . . . won't y'all start a trend of not hatin on a mafucka."

17. Based on training and experience, I know obtaining location information on the **Target Cellular Device** will assist investigators in identifying **WARD**'s location as he will likely have the cellular telephone with him. I know that cell phones contain vast amounts of personal data; therefore, people usually carry their cell phones with them on their person or store them nearby. Here, **WARD** has been associated with this telephone number since at least October 2022. He posted the number on his active social media account within the last month. Given these and other circumstances detailed above, I conclude that **WARD** currently uses the **Target Cellular Device** and likely carries it with him. The requested information on the **Target Cellular Device**,

associated with **WARD**, will assist law enforcement in apprehending this fugitive for whom there is active federal arrest warrant.

18. I believe that the historical information sought by this warrant will further my investigation by revealing, among other things, **WARD's** movements following his failure to appear at his supervised release hearing. This location data will assist me identify patterns, if any, to **WARD's** movements as well as locations where he has frequented since he fled the Dayton area. In short, the historical information will assist me apprehend **WARD**.

19. In my training and experience, I have learned that **AT&T** is a company that provides cellular telephone access to the public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

20.     Based on my training and experience, I know that **AT&T** can collect E-911 Phase II data about the location of the **Target Cellular Device** by initiating a signal to determine the location of the **Target Cellular Device** on **AT&T's** network or with such other reference points as may be reasonably available.

21.     Based on my training and experience, I know that **AT&T** can collect cell-site data about the **Target Cellular Device**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

22.     Based on the foregoing, I request the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

23.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cellular Device** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence,

change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. I further request the Court direct **AT&T** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **AT&T**. I also request the Court direct **AT&T** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **AT&T's** services, including by initiating a signal to determine the location of the **Target Cellular Device** on **AT&T's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate **AT&T** for reasonable expenses incurred in furnishing such facilities or assistance.

25. I further request the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cellular Device** outside of daytime hours.

26. I further request the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing effort to apprehend a federal fugitive. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*Fred Zollers*

Frederick Zollers
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to ~~before me~~ By telephone on this __10th__ day of April 2024.

Caroline H. Gentry
United States Magistrate Judge

10

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number ███████, (the **"Target Cellular Device"**), whose wireless service provider is **AT&T**, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida 33408 (hereinafter, "Provider").

2. Information about the location of the **Target Cellular Device** that is within the possession, custody, or control of **AT&T** (i.e., the Provider) including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I.   Information to be Disclosed by the Provider**

1. *Historical and Subscriber Information*. To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the **Target Cellular Device** listed in Attachment A for the time period **March 14, 2024 to present**:

    a. The following information about the customers or subscribers of the **Target Cellular Device**:

        i. Names (including subscriber names, user names, and screen names);
        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
        iii. Local and long distance telephone connection records;
        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
        v. Length of service (including start date) and types of service utilized;
        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
        viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cellular Device**, including:

        i. the date and time of the communication, the method of the communication, and the source and destination of the communication – i.e., call detail records - and records of data events across all networks (3G, 4G, 5G)
        ii. All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and

       "sectors" (i.e., faces of the towers) received a radio signal from the Target Cell Phone for the time period **March 14, 2024 to present**. Included is any specialized location data commonly referred to as Network Element Location Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

c. The Provider shall deliver the information set forth above within **7 days** of the service of this warrant and the Provider shall send the information via facsimile or United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

>   Federal Bureau of Investigation
>   Attn: SA Nicholas Graziosi
>   7747 Clyo Rd.
>   Dayton, Ohio 45459

2. *Prospective Location Information*. The Provider shall provide all prospective location information about the location of the **Target Cellular Device**, described in Attachment A for a period of **thirty days**, during all times of day and night. "Information about the location of the **Target Cellular Device**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the **Target Cellular Device** described in Attachment A. To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the **Target Cellular Device** on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3. *Prospective Pen-Trap Information*. Pursuant to 18 U.S.C. § 3123, the FBI may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

    - IP addresses associated with the cell phone device or devices used to send or receive electronic communications
    - Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
    - Identity of all accounts that are linked to the account by cookies
    - Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone identified in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN
    - IP addresses of any websites or other servers to which the cell phone device or devices connected
    - Source and destination telephone numbers and email addresses
    - "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)
    - Source and destination telephone numbers
    - Date, time, and duration of communication

3

- All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication. Included is any specialized location data commonly referred to as Network Element Location Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

II. **Information to be Seized by the Government**

1. All information described above in Section I that will assist law enforcement locate federal fugitive Damitres Ward who is charged with a violation of Title 18, U.S.C., §§ 922(g)(1) and 924(a)(8).

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).